**UNITED STATES of America,
Plaintiff,**

**v.**

**Roy KELLEY, Defendant.**

**Crim. A. No. 5876.**

United States District Court
W. D. Michigan, S. D.

Sept. 27, 1955.

Wendell A. Miles, U. S. Atty., Grand Rapids, Mich., for plaintiff.

Roy Kelley, in pro. per.

KENT, District Judge.

The Grand Jury for the Western District of Michigan returned a two-count indictment against the above-named defendant and George Lloyd Glisson and Robert Emmett Leonard, charging, in effect, in Count I that the three men named entered the Centreville State Bank at Centreville, Michigan, with intent to commit a larceny therefrom, and in Count II that the same men by force and violence and by an assault did rob the bank of $4,306 in money, the deposits in said bank being insured by the Federal Deposit Insurance Corporation and being a member of the Federal Reserve System.

On the 18th of November, 1954, Robert Emmett Leonard appeared before the Court and pleaded guilty to the charges against him. On the 24th day of November, 1954, Kelley and Glisson appeared before the Court, without counsel and entered pleas of not guilty. Defendants requested the appointment of counsel and Mr. Collins E. Brooks of Grand Rapids, a lawyer well-known to this Court and of good reputation, was appointed to represent the defendant, Roy Kelley. The Court ordered the trial of Kelley and Glisson to commence on Monday, the 17th day of January, 1955, and the trial continued for a day and a half. During the noon recess on the second day of the trial Kelley and Glisson advised the Court that they desired to be heard relative to the pleas of not guilty previously entered. When Court reconvened the respondents advised the Court that they desired to withdraw their former "not

584

guilty" pleas and enter pleas of "guilty" to each count of the indictment.

After a full interrogation of each defendant separately, the Court was satisfied that each of the defendants was pleading guilty voluntarily and with full knowledge of the consequences of such plea. That portion of the proceedings relative to this defendant, Roy Kelley, is set forth in the margin.[1]

1. "Mr. Miles: If the court please, this is in the matter of United States v. Roy Kelley and the United States v. George Lloyd Glisson, both cases being docketed as No. 5876. The records show that on the 17th day of November, 1954, a grand jury for the Western Judicial District in the State of Michigan returned an indictment against Roy Kelley, George Glisson, and Robert Leonard in two counts, alleging violations of Title 18, Section 2113; that Robert Leonard appeared before this court on the 18th day of November, 1954, and entered a plea of guilty; that on the 24th day of November, 1954, Mr. Kelley and Mr. Glisson appeared before this court without counsel and entered pleas of not guilty; that bail was fixed in the amount of $20,000 each, and that they requested that counsel be appointed for them to represent them upon all proceedings, and at such time as their trial could be heard.

"May the record further reflect that this court ordered the trial to be heard on Monday, the 17th of January, 1955, and that trial has begun and the government has been presenting its proofs in this case for the last day and a half.

"I have been advised by Mr. Earl W. Dunn, whom this court appointed to represent Mr. George Lloyd Glisson, and also by Mr. Collins Brooks, whom this court has appointed to represent Mr. Roy Kelley, and who have been representing these defendants in these proceedings, that they would and their clients would like to make a further statement at this time with reference to the plea which they made on the 24th day of November, 1954." pp. 1–2.

"Mr. Brooks: (counsel for the defendant Kelley) If it please the court, it is my understanding that Mr. Kelley would like to make a statement to the court.

"The Court: All right, step forward.

"Mr. Brooks: Mr. Kelley, I have been appointed by this court to represent you in connection with these proceedings, is that correct?

"Defendant Kelley: That is correct.

"Mr. Brooks: And have you advised me that you wish to make a statement to the court at this time with reference to your prior plea of not guilty to this indictment?

"Defendant Kelley: Yes, sir.

"Mr. Brooks: Would you like to make a statement at this time?

"Defendant Kelley: Yes, sir. I want to plead guilty.

"The Court: You want to plead guilty?

"Defendant Kelley: I want to plead guilty, yes, sir.

"The Court: To Count 1 of the indictment, to Count 2 of the indictment, or to both counts?

"Defendant Kelley: To both counts.

"The Court: To both counts of the indictment which you have had previously read to you?

"Defendant Kelley: Yes, Your Honor.

"Q. (By the Court) You understand you do not have to plead guilty? A. (By Defendant Kelley) Yes, sir.

"Q. That you may continue with the trial by jury which is now in progress? A. That is right.

"Q. You understand that if you continue the trial, the government has the burden of proving all the essential elements—A. Yes, Your Honor.

"Q. —necessary to constitute the offenses charged to the satisfaction of each of the members of that jury beyond a reasonable doubt? A. That is right.

"Q. Do you understand that? A. Yes, Your Honor.

"Q. In other words, that there is nothing that compels you to plead guilty; you may proceed with the trial and your attorney will continue to represent you? A. Yes, Your Honor.

"Q. Your attorney was appointed by the court. Have you been satisfied by the representation he has given you? A. Yes, Your Honor.

"Q. You have had his advice in connection with your plea of guilty? A. Yes, sir.

"Q. As to whether you should or should not plead guilty at this time? A. No, sir.

"Q. Has he advised you? A. He did not.

"Q. You made up your own mind? A. I made up my own mind.

"Q. Has anyone made any threats to you if you do not plead guilty? A. No, sir.

"Q. Has anyone made you any promises of leniency or other consideration if you do plead guilty? A. No promises.

"Q. Have you been arrested before? A. Yes, sir.

"Q. How many times? A. I think about three times I have been arrested.

After a complete presentence investigation by the Probation Department, the defendant Kelley was sentenced to a term of 12½ years on each of the two counts of the indictment, the terms to be served concurrently and not consecutively.[2] Since his commitment Kelley has addressed numerous letters to the Court requesting that his sentence be reduced and complaining that the defendant Leonard received a shorter sentence.[3]

On June 6th there was filed with the Court a paper labeled, "Motion for Transfer from District for Plea and Sentence" which paper contained "A Motion for a New Separate Trial based on

"Q. Have you been in prison? A. Twice.

"Q. Did you stand trial either time? A. Once.

"Q. Once you stood trial and once you pleaded guilty? A. Yes, Your Honor.

"Q. So that you understand the difference between a plea of guilty and a trial by jury? A. Yes, Your Honor.

"Q. You understand that the penalty for the offenses charged against you is very severe? A. Yes, sir.

"Q. And that you might receive sentences aggregating the total? A. Yes, sir.

"Q. It is with that understanding, with your previous knowledge and experience, that you are pleading guilty here? A. Yes, sir.

"Q. You have heard the testimony which has been presented in this court for the past day and a half since the jury was sworn? A. Yes, Your Honor.

"Q. Did you make a trip with Leonard and Glisson from Ann Arbor to Kalamazoo and Centreville as described by Leonard? A. I did.

"Q. Did you make that trip planning to hold up the bank or a bank? A. Not planning, no.

"Q. Did you go to Centreville with them? A. Yes, I did.

"Q. Did you change your clothes before you went down there? A. No, I didn't.

"Q. What clothes did you wear? A. What I had on.

"Q. Did you go into the bank at Centreville? A. Yes, I did.

"Q. Did you have a gun? A. Yes, I did.

"Q. And did you tell the witness Paul Dillon to come out of the back room and lay down on the floor? A. I did not.

"Q. You were present when it was done? A. Yes, sir.

"Q. You went into the bank with a gun, intending to hold it up? A. Yes, sir.

"Q. And you and the men with you took the money out of the bank? A. That is true.

"Q. That was what you intended to do when you went in there? A. That is true.

"Q. And then you drove back toward Kalamazoo and were arrested there near Kalamazoo? A. Yes, Your Honor.

"Q. You were not a hitch-hiker? A. I wasn't.

"Q. You were in on the whole deal? A. I was.

"Q. How old are you? A. Thirty-seven.

"Q. How far did you go in school? A. Sixth, grammar.

"Q. Are you married? A. Yes, sir.

"Q. Living with your wife? A. No.

"Q. You have children? A. Yes, sir, I have three.

"Q. Where do they live? A. They are in Kentucky right now.

"Q. Did you work before you went to Centreville? A. Yes, I did.

"Q. In what capacity? As a carpenter? A. At times I worked carpenter work, and when there wasn't any I was painting and contracting, for myself.

"Q. You understand what you are doing in pleading guilty here? A. Yes, sir.

"Q. You are doing it freely and voluntarily? A. Yes, sir.

"The Court: All right. The court is satisfied that this respondent understands his plea and that the pleas of guilty to the two counts of the indictment are made freely and voluntarily and understandingly; and the pleas may be accepted and entered.

"The matter may be adjourned until Friday, February 18, at 2:00 p.m., for sentence.

"The respondents may be remanded to the custody of the marshal without bail, pending the sentence.

"Is that date satisfactory to you gentlemen? Mr. Dunn?

"Mr. Dunn: I believe I shall be able to be here.

"The Court: Mr. Brooks?

"Mr. Brooks: As far as I know, it is.

"The Court: All right, that is all." pp. 8–15.

2. Defendant Leonard was sentenced to 7½ years; defendant Glisson to 20 years.

3. Leonard was sentenced to 7½ years on each count of the indictment, the terms to be served concurrently. Glisson was sentenced to 20 years on a similar basis.

the Grounds of Newly Discovered Evidence." This motion consists of one short paragraph in which petitioner states that he files the motion under the provisions of 28 U.S.C.A. § 1915. Petitioner states that he is unable to pay the costs of the motion or the record and prays for transfer of his case to the district of Judge Barnes of Chicago. He states that the motion is filed under Federal Rules of Criminal Procedure, rules 20, 21 and 33, 18 U.S.C.A., and that the petition is for specified court records.

From a letter dated, June 28, 1955, and received July 5, 1955, it appears that petitioner intended the June 6th petition to be a prayer for a transcript of the complete record in forma pauperis.

On July 16, 1955, petitioner filed two papers, one entitled "Petition of Due Process of Law in Support of Writ of Habeas Corpus ad testificandum and Motion of Redress on leave to appeal in forma pauperis before Court of Appeals and Supreme Court of United States based on prejudice and newly discovered evidence." The other paper filed on July 16th was labeled, "Petitioner of a Writ of Habeas Corpus ad testificandum filed in forma pauperis."

In the first petition Kelley recites that he has no money to pay costs or counsel; that the defendant Leonard testified falsely in return for a shorter sentence; that the petitioner was kidnapped by the defendant Leonard; that petitioner has four witnesses to testify as to the "facts", although the witnesses are not identified and neither is there a summary of the testimony which they would offer; that petitioner pleaded guilty under threat by the other defendant that if he did not he would be killed, that he is no longer fearful of personal harm since the defendant Leonard is confined in a different institution; that the sentencing judge was prejudiced as shown by a letter from the United States Probation Officer dated May 3, 1955, (the letter in question merely stated that the sentencing judge was not disposed to alter the sentence originally imposed). The sec-

ond of the two papers states again that the petitioner was without funds and asks that he be brought before the court to present newly discovered evidence; that questions of fact will be raised concerning false testimony; that petitioner is a material and necessary witness.

It should be noted at this time that the defendant Leonard, to whom the petitioner makes reference, was confined in a different jail in this district than the defendant Kelley from the time that defendant Leonard pleaded guilty.

From the petitions on file one thing is clear, the petitioner would like to be released from prison. Having given up hope of being released by this court he would like to have his case transferred to some other court recommended to him by fellow prisoners.

Also it appears that he would like a transcript of the proceedings which are of no consequence since his plea of guilty was received, and it may be that he would like to appeal by some means not outlined in the papers on file.

The care taken at the time the plea of guilty was entered is evidenced by the quotations from the transcript previously footnoted.

The allegations relative to new evidence are not supported by statements of fact nor are they supported by affidavits as required by the Rules.[4]

Letters previously received request that the sentence imposed be reduced from 12½ years to 5 years. In several of the letters Kelley stated that he was drunk at the time that the robbery took place; that he was influenced by his companions and that he participated in the robbery under threats from the other participants. He has also addressed letters to a member of the United States Senate requesting intervention by the Senate.

In effect the petitioner seeks various types of relief—(1) that new counsel be appointed, (2) that his case be transferred to another court (apparently for trial), (3) for a Writ of Habeas Corpus

4. Federal Rules of Criminal Procedure, Rules 33 and 37. 18 U.S.C.A.

ad testificandum, (4) for a vacation or correction of sentence, (5) for a new trial, (6) for a general review of his case to determine whether his constitutional rights have been infringed, and (7) for leave to appeal. The court's conclusion as to the types of relief which the defendant may be requesting is based upon the motions filed and the several letter briefs filed in support of the motions.

■ Defendant has made reference to a number of decisions, many of which are not applicable to his situation. If questions of fact were raised the court is satisfied that the petitioner would be entitled to appear before the court and offer proofs. Walker v. Johnston, 1941, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830. But see Gilmore v. United States, 10 Cir., 1942, 129 F.2d 199, and Barrett v. Hunter, 10 Cir., 1950, 180 F.2d 510, 20 A.L.R.2d 965. This court is satisfied that no questions of fact are raised by the petitions on file herein, and that the presence of the defendant is unnecessary. Therefore the petition for Writ of Habeas Corpus ad testificandum is denied.

■ Petitioner has asked that counsel be appointed. This court is of the opinion that it would be an imposition upon the members of the Bar to require any member thereof to represent the defendant in this proceeding. He was represented at the time of his trial and at the time of his plea of guilty by competent counsel, with whom he expressed satisfaction. The petition for appointment of counsel is denied.

■ Petitioner has requested that his case be transferred to another court without alleging any reasons therefor other than dissatisfaction with the sentence imposed. It appears that he mistakes his remedies. The provisions of Rule 20 of the Rules of Criminal Procedure [5] relative to the right to transfer of the proceedings for plea and sentence are not appropriate in this situation.

■ The plea for vacation or correction of sentence is apparently made pursuant to Title 28, U.S.C.A. § 2255.[6] It does not appear that the sentence in question was imposed in violation of the Constitution or Laws of the United

5. "Rule 20. Transfer from the District for Plea and Sentence. A defendant arrested in a district other than that in which the indictment or information is pending against him may state in writing, after receiving a copy of the indictment or information, that he wishes to plead guilty or nolo contendere, to waive trial in the district in which the indictment or information is pending and to consent to disposition of the case in the district in which he was arrested, subject to the approval of the United States attorney for each district. Upon receipt of the defendant's statement and of the written approval of the United States attorneys, the clerk of the court in which the indictment or information is pending shall transmit the papers in the proceeding or certified copies thereof to the clerk of the court for the district in which the defendant is held and the prosecution shall continue in that district. If after the proceeding has been transferred the defendant pleads not guilty, the clerk shall return the papers to the court in which the prosecution was commenced and the proceeding shall be restored to the docket of that court. The defendant's statement shall not be used against him unless he was represented by counsel when it was made." Federal Rules of Criminal Procedure, 18 U.S.C.A.

6. "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction,

588

States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law or that such sentence is otherwise subject to attack as required by the cited statute.

While in the opinion of this court the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court has caused notice thereof to be served upon the United States Attorney, who has filed a brief in opposition thereto and has stated that he does not care to be heard in open court.

As has been previously indicated the court does not feel it necessary to require the production of the prisoner for the determination of the questions raised by the several motions on file. The court is satisfied that under the provisions of Rules 21 and 22, the respondent is not entitled to have his case transferred to another district for a decision of the motion raised in connection with the plea of guilty heretofore entered.

This court is satisfied that the provisions of Title 28, U.S.C.A. § 2255, and Rule 25 of the Federal Rules of Criminal Procedure, do not require the transfer of this case for decision of a motion for vacation or correction of sentence. 4 Barron & Holtzoff Federal Practice and Procedure § 2301, Cook v. United States, 1 Cir., 1949, 171 F.2d 567, certiorari denied 336 U.S. 926, 69 S.Ct. 647, 93 L.Ed. 1088.

■ The plea for a new trial is dependent upon the vacation of the sentence and in the opinion of this court there is no reason for either. The motion therefore is denied.

Defendant also asked for a general review of his case to determine whether his constitutional rights have been infringed. From the testimony at the trial which was commenced and not finished, having been terminated by the plea of guilty, it appears that the defendants, including this defendant, were arrested by the local police within one hour after the robbery occurred. They were promptly arraigned before then United States Commissioner David E. Nims. They were properly indicted by the Grand Jury of this district, separate counsel were appointed for Kelley and Glisson on request. A prompt trial was had after time was permitted for the attorneys to prepare themselves to try the case.

At the time that he pleaded guilty defendant frankly and fully admitted his participation in the bank robbery. The court asked "You were in on the whole deal?", the petitioner answered, "I was". In effect the petitioner now denies the statements made at the time of his plea of guilty, but makes no allegation as to specific facts in support of his denial of the earlier admissions.

The court is not enlightened as to the character of the newly discovered evidence claimed to be in the possession of the petitioner.

■ Respondent was fully advised of his rights at the time of his first arraignment and at the time of the plea of guilty. He was assisted by the advice of counsel

or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

"A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

"An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

"An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."

with whom he expressed satisfaction, and we are of the opinion that his constitutional rights have been fully protected throughout the entire proceeding.

We call attention to the case of Adams v. United States, D.C.Cir., 1955, 222 F.2d 45, 48, in which the court said—

"We cannot say the District Court erred in denying without a hearing appellant's motion under Section 2255. There was no legal point which required discussion or an explicit ruling; there was no genuine issue of material fact which required an evidentiary hearing. Summary disposition of futile and groundless motions is permissible under the terms of the statute, when ' "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief " ' ".

For the reasons herein stated the motion and requests of the petitioner are denied. An order may be entered accordingly.